1
2
3
4
5                    IN THE UNITED STATES BANKRUPTCY COURT

6                        FOR THE DISTRICT OF ARIZONA

7

8   In re:                                  Chapter 7

9   Alan Kush,                              Case No. 05- 24972

10                              Debtor,      Adv. No. 06-225

11

12  Barbara Kush,                           AMENDED MEMORANDUM DECISION

13              Plaintiff,

14      vs.

15
    Alan Kush,
16                  Defendant

17

18

19                         **1. Preliminary Statement**

20          The Plaintiff, Barbara Kush, filed her Complaint seeking to have certain debt

21  excepted from discharge pursuant to 11 U.S.C. § 523(a)(15) on February 10, 2006.  The

22  Defendant, Alan Kush, filed his Answer on April 11, 2006.  The Court conducted various pre-

23  trial proceedings in this Adversary Proceeding, and a trial was conducted on September 13,

24  2006.

25          The Plaintiff is seeking to have a debt in the principal amount of $36,349, plus

26  interest accruing thereon, deemed non-dischargeable.  This Decision shall constitute the Court's

27

28                                        1

findings of fact and conclusions of law pursuant to Fed.R.Bank.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2006).

## II. Discussion

### 1. Factual Findings

The Plaintiff and the Debtor were married in 1975. During the marriage, the Debtor owned a landscaping business that failed to remit payroll withholding and other taxes during the 1996 and 1997 taxable years. At that time, the Plaintiff was employed by Arizona State University. The couple filed for divorce in 1997, and on March 17, 1999, a Consent Judgment and Decree for Dissolution of the Marriage ("Decree") was entered. The Decree awarded the house at 1639 W. Inverness, Tempe, Arizona, 85282 to the Plaintiff. It awarded all items related to the landscaping business to the Debtor. The Decree provided, inter alia, that each party would be responsible for, pay, and hold the other harmless from all income taxes, and any interest and penalties thereon, attributed to all assets and liabilities awarded or confirmed to that party by the Decree. The Decree also affirmed that the Debtor would indemnify the Plaintiff and hold her harmless for any debt, liability or obligation which he had therein been ordered to pay.

The Plaintiff testified, and the Debtor did not refute, that on May 17, 1999, the Plaintiff received two Notices of Intent to Levy from the Internal Revenue Service, addressed to both her and the Debtor. These Notices related to the withholding taxes from the Debtor's landscaping business for the 1996 and 1997 taxable years which remained unpaid. Since the Decree required that the Debtor pay said taxes, the Plaintiff requested said payment by him. The Debtor could not, or did not, pay the taxes, and since the Plaintiff was in danger of losing her home as a result of the Notices, the Debtor agreed to assist the Plaintiff by co-signing an obligation creating a second mortgage on her home from The Money Store. The funds derived

2

1  from the second mortgage were utilized by the Plaintiff to pay the Debtor's tax obligations.  In

2  turn, the Debtor agreed to make all payments on the second mortgage as a form of

3  reimbursement or indemnification to the Plaintiff.

4          At the time of the close of escrow, the Plaintiff and the Debtor agreed to repay

5  The Money Store the principal amount of $25,255.41, with interest to accrue thereon at the

6  annual rate of 12.72%.[1]  Pursuant to the agreement between the Plaintiff and the Debtor, the loan

7  closing statement provided for the payment of the Debtor's obligations of $22,294.07 to the

8  Internal Revenue Service and $1,011.51 to the Arizona Department of Revenue.[2] The Debtor and

9

10         [1] The Settlement Statement and other loan documents presented by the Plaintiff as

11  Exhibit 11 are unsigned.  However, these documents were admitted into evidence, with the

12  Debtor not disputing their accuracy, veracity, or authenticity.  The Money Store Loan Settlement

13  Statement, dated July 22, 1999, reflects the principal amount of the loan to be $25,255.41,

14

15  whereas the Truth in Lending Disclosure reflects a slightly different principal amount of

16  $25,650.04.  It appears that the amount set forth in the Settlement Statement is the final amount

17  agreed to between the parties, reflecting a further reduction of the principal amount by the

18

19  Debtor as of the closing date.  For purposes of this Decision, the Court will use the lower

20  principal amount of $25,255.41.

21         [2] Exhibit 11.   The Plaintiff also obtained Credit Life, which cost an additional

22  $1,319.83.  Because the Debtor agreed to pay the debt resulting from the Plaintiff's payment of

23  his Federal and State taxes, the Court has included the full amount of the second mortgage

24  obligation as the principal amount of the non-dischargeable debt.  It should be noted that the

25  Debtor made payments on said debt for a number of years and ultimately executed a second

26

27  promissory note agreeing to repay the then remaining obligation of $24,143.69.  See Exhibit 4.

28                                              3

1   the Plaintiff co-signed the promissory note, and were named on all documents associated with

2   the loan.  As a result, they committed to repay the obligation in 180 monthly payments of

3   $319.75 each, for total principal, interest, and other payments on the loan in an amount equal to

4   $57,555.95.  However, because of the Debtor's agreement to indemnify the Plaintiff, the Debtor

5   agreed to make all payments on the loan and keep  the mortgage coupon book.  Later, the Debtor

6   changed the billing address for the loan, on file with The Money Store, to his address from that

7   of the Plaintiff.  The Debtor made all payments on the second mortgage for a period of nearly

8   four years.

9           The Plaintiff later became romantically involved with a certain Mr. Goff, who

10  agreed to pay off the first mortgage on the Plaintiff's home.  As a result, the second mortgage of

11  The Money Store became a first lien on the property.  The Plaintiff testified that once she

12  terminated her relationship with Mr. Goff, she desired to repay him for the moneys advanced by

13  him to pay off her first mortgage.  The Plaintiff decided to obtain refinancing, but soon found

14  that no lender would advance any funds to her unless said lender obtained a first lien on her

15  home.  Such a condition for refinancing required that she pay The Money Store in full.  Once

16  again she approached the Debtor.  Since HomEq was willing to provide such financing, the

17  Debtor and Plaintiff agreed that HomEq would pay off the obligation to The Money Store, the

18  Debtor would execute a new promissory note in favor of the Plaintiff in the principal amount

19  then remaining due and owing to The Money Store, and the Debtor would make payments to the

20  Plaintiff on said note, with the Plaintiff to make payments on the underlying loan to HomEq.  At

21  the time, the principal amount of $24,143.69 remained due and owing on The Money Store loan.

22  The Plaintiff testified that the Debtor and Plaintiff attempted to replicate the terms of The Money

23  Store loan.  They memorialized their agreement in a notarized "Promissary Note" [sic] ("Note"),

24  dated March 24, 2003, in which the Debtor agreed to pay 136 payments of $319 each to the

25  Plaintiff, for a total amount of principal, interest, and other charges of $43,384.[3]  The Note

26

27          [3] Plaintiff's Exhibit 4 no. 471.  The principal amount was $24,143.69.

28                                                          4

1  provided that any late payment would result in a fee of $25.  The Debtor provided no evidence to

2  refute any of the foregoing factual findings.

3            The Plaintiff's detailed accounting reflects that the Debtor made payments on the

4  Note until April, 2005; at that point, the Debtor ceased making payments.  The Plaintiff sent

5  several letters to the Debtor regarding the default, after she was unable to contact him by

6  telephone.  The Plaintiff's accounting reflects that prior to the cessation of the Debtor's

7  payments, he did make some payments late, incurring late fees.  As of January 2006, the Debtor

8  owed the Plaintiff the principal amount of $24,473.67 on which interest of $7,690.27 had

9  accrued, totaling $32,163.94 due and owing at that time.[4]

---

[4]   The parties executed the Promissory Note, which set forth 136 payments of $319 per

month using the standard amortization statement generated initially by the Money Store.  This

Note would have required the payment of the principal amount of $24,143.69.  Plaintiff's Exhibit

4 no. 471, 473.  The Plaintiff multiplied 136 by $319 to arrive at a total loan payoff, including

interest, of $43,384.00.  Plaintiff's Exhibit 5 no. 465.  Although the Plaintiff testified that the

parties had the Note created with the payments set up the same way they were as if the Debtor

were still paying on the second mortgage, the parties' method of arriving at the total loan payoff

is not relevant to this Court's determination of what the non-dischargeable principal amount of

the obligation is at this time.  See Plaintiff's Exhibits 4-7.  This is because, under the parties'

method of accounting, the Plaintiff's payoff amount is inflated by the interest accrual

component.  To determine the principal amount the Plaintiff is currently owed, the Court has

created a new schedule using the parties' agreed terms, including the original principal amount,

the interest rate, any payments made by the Defendant, and any late fees.  See Exhibit A, "Loan

Amortization Schedule."  The Schedule indicates that the principal amount currently due and

5

1        The Debtor, acting pro se, presented his own documentation to the Court,

2 apparently only in support of his poor financial position, but he failed to request admission of

3 any of these documents into evidence. The Debtor also advised the Court that as of the time of

4 the trial, he had failed to file his 2005 income tax returns, so he was unable to provide critical

5 information to the Court as to his current financial situation. Additionally, he provided no

6 budget of his current personal income or expenses; the only documentation reflecting his income

7 and expenses being the schedules that he filed at the commencement of his administrative case.

8 The Debtor did testify that he worked at Big Lots in addition to running his landscaping

9 business. However, without more information, the Court was unable to make a determination of

10 the Debtor's inability to pay or relative detrimental consequences/benefit of the parties

11 concerning the Debtor's discharge.

12        Even if the Court were to consider and analyze the Debtor's exhibits, which were

13 not admitted into evidence, the Court has additional concerns. For example, the Debtor testified

14 regarding his 2004 tax returns which reflected that the Debtor had received a substantial amount

15 of income that year: net earnings from his business in excess of $50,000. However, the Debtor

16

17 owing is $24,473.67, on which interest continues to accrue at the annual rate of 12.72% per

18 annum. See Fullmer v. U.S., 962 F.2d 1463, 1468 (10th Cir. 1992) (holding that non-

19 dischargeable debt persists unmodified during and after bankruptcy as a personal liability and

20 therefore accrues interest, unlike a dischargeable liability of the estate); 4 COLLIER ON BANKR. ¶

21 502.0.(3)(b)(3) (summarizing prevailing view, regarding non-dischargeable debt, that bankruptcy

22 simply suspends the payment of interest accruing on the debt until a judgment is entered

23 declaring the debt non-dischargeable, but does not modify the debt to relieve payment of

24 accruing interest). The parties may wish to create a new amortization schedule to facilitate

25 repayment of the Debtor's obligation to the Plaintiff.

26

27

28 6

1  testified that in 2005, he earned only a net of $11,245 from his business because he lost a

2  number of accounts.  Given his net earnings in 2004, the Court did not find his substantial loss of

3  income the following year, without further evidence, credible.  The Debtor also testified that he

4  suffered a loss of $30,720 in gross revenues between 2005 and 2006, but there was no support

5  for that assertion other than the Debtor's self-serving testimony.  Finally, the Debtor testified

6  that in 2005, his income was supplemented by the sum of $16,748.04 when he "cashed in" his

7  IRA and an insurance policy.  From this evidence, if considered, the Court is unable to conclude

8  that the Debtor has an inability to pay the Plaintiff or, after weighing the detrimental

9  consequences to be suffered by the Plaintiff versus the benefit to be obtained by the Debtor, that

10  the Debtor should receive a discharge of the Plaintiff's debt.

11

12  **2.  Legal Discussion**

13  For the Plaintiff to succeed on her claim under Section 523(a)(15), she bears the

14  burden of a prima facie showing that the particular obligation to be excepted from discharge is

15  not in the nature of support and arises from a divorce decree or other order of a court of record,

16  incurred in the course of a divorce or separation.[5]  Jodoin v. Samayoa, 209 B.R. 132, 141 (9th

17  _____

18  [5]  11 U.S.C. § 523(a)(15)(West 2005) provides:

19  A discharge . . . does not discharge an individual debtor from any debt –

20
21  (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course
    of a divorce or separation or in connection with a separation agreement, divorce decree or
    other order of a court of record, a determination made in accordance with State or
22  territorial law by a governmental unit unless –

23
    (A) the debtor does not have the ability to pay such debt from income or property of the
24  debtor not reasonably necessary to be expended for the maintenance or support of the
    debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the
25  payment of expenditures necessary for the continuation, preservation, and operation of
    such business; or
26

27  (B) discharging such debt would result in a benefit to the debtor that outweighs the

28  7

1  Cir. B.A.P. 1997).  The burden then shifts to the Debtor, who must prove that he does not have

2  the ability to pay the obligation to the Plaintiff, or that the benefit he will receive from the

3  discharge of the debt outweighs the detrimental consequences to the former spouse and any

4  dependent of the parties.  This is a balancing of the relative hardship to the Plaintiff versus the

5  benefit to the Debtor if the debt is discharged.  In re Myrvang, 232 F.3d 1116 (9th Cir. 2000);

6  Jodoin, 209 B.R. at 141.  Once the Plaintiff has met her burden of going forward to reflect that

7  the debt is set forth in a divorce decree or order and is not in the nature of support, the Debtor

8  carries the burden of persuasion on the issue of relative hardship.  In re Fellner, 256 B.R. 898

9  (8th Cir. B.A.P. 2001); In re Konick, 236 B.R. 524 (1st Cir. B.A.P. 1999).  The Debtor also

10  carries the burden of persuasion on the issue of inability to pay, which must be assessed as of the

11  time of trial.  Jodoin, 209 B.R. at 142.  Finally,  "exceptions to discharge for domestic relations

12  debts are liberally construed in favor of the objecting creditor."  In re Swartz, 339 B.R. 497, 501

13  (Bankr. W.D. Mo. 2006).

14          Based upon the evidence presented, the Court concludes that the Plaintiff has met

15  her burden of going forward, and the Debtor has not met his burden of persuasion on the issue of

16  the ability to pay or the relative hardship to the parties.  The Decree plainly sets forth an

17  indemnification provision, allocates the business obligations and its expenses to the Debtor

18  personally, and allocates the tax liability for the business to the Debtor.  Arizona law provides

19  that when one party to a divorce decree pays a debt therein that was allocated to the other, the

20  "paying" spouse is entitled to reimbursement from the non-payer.  See Srock v. Srock, 11 Ariz.

21  App. 483, 484-85; 466 P.2d 34, 35-36 (Ariz. App. 1970).  Such a debt is not enforceable as

22  support, but is enforceable as a debt.  Id.

23          Although the Plaintiff's original obligation related to an indemnification for the

24  payment of the Debtor's tax obligations, it was subsequently transformed into an obligation

25  under a promissory note.  However, the Plaintiff was clearly able to trace the obligation.  If a

26  _____

27      detrimental consequences to a spouse, former spouse, or child of the debtor.

28                                              8

debt is originally non-dischargeable in bankruptcy, a change in the form or structure of the debt does not change the nature of its non-dischargeability.. See Merrill Lynch Business Financial Services, Inc. v. Kim, 125 B.R. 594 (Bankr. C.D. Cal. 1991) (holding that where the debtor fraudulently obtained a credit line, the lender's restructuring of the loan to change the payment terms and to add the debtor's home as security for the repayment of the obligation did not change fundamentally the non-dischargeable nature of the loan, because the restructuring was an extension, modification, or forbearance of the prior loan, rather than a new loan). In this case, when the Plaintiff paid the Debtor's tax liability by obtaining a second mortgage on her home, the Debtor entered into a loan transaction to repay or indemnify the Plaintiff. The fact that the Plaintiff and the Debtor restructured or modified this obligation to allow the Plaintiff to pay a third party did not change the essential nature of the obligation. The Debtor continued to agree to repay the obligation because it had arisen out of the Decree and he had agreed that it would remain his obligation. The essential nature of the obligation, a debt enforceable under Arizona law which arose in connection with a divorce decree, was transferred to the Note. Thus, if the Court determines the original obligation to be non-dischargeable under Section 523 (a)(15), that finding may be transferred to, and be just as effective as to, the restructured obligation. Thus, if this Court concludes that the original obligation obtained by the Plaintiff from The Money Store is a non-dischargeable obligation that the Debtor must repay to the Plaintiff, the Debtor's obligation, as set forth in the Note, is equally non-dischargeable.

The Court further emphasizes that the Plaintiff obtained the Debtor's consent each time she changed the terms and conditions of the debt. Her undisputed testimony and the evidence show that when she obtained the second mortgage on her home, she did so with the Debtor's consent. The fact that the Debtor made almost four years of payments on the second mortgage is further proof of his consent to its terms and conditions. When the Plaintiff refinanced the second mortgage, she obtained the Debtor's consent once again, evidenced by his signature on the Note. Accordingly, the Plaintiff has met her burden of going forward, or a

9

prima facie case, under Section 523(a)(15).

However, the Debtor has failed to carry his burden of persuasion. In light of the Debtor's unreliable, unsubstantiated testimony; his 2004 tax returns which reflect substantial earnings for the Debtor; his obtaining a second job in 2005; his failure to file his 2005 tax returns; and his failure to provide or substantiate his income and expenses, in a budgetary format, for 2005, the Debtor has failed to show this Court that he is unable to pay the sum of $320 per month to the Plaintiff. The Debtor's failure to provide his 2005 tax returns deprived the Court of reviewing the most relevant financial evidence concerning the Debtor's ability, as of the time of trial, to pay the obligation due and owing to the Plaintiff. See In re Jodoin, 209 B.R. at 142. Moreover, without accurate financial information from the Debtor, the Court is unable to commence the analysis of the relative hardship to the parties.

### III. Conclusion

Based upon the foregoing, the Court concludes that Debtor has failed to set forth any evidence which must be refuted by the Plaintiff. The Plaintiff met her burden of going forward, or a prima facie case, that the particular obligation to be excepted from discharge was not in the nature of support and arose from the Decree. The Debtor failed to present any credible evidence in support of his burden of persuasion. In essence, the Debtor presented no evidence which needed to be refuted by the Plaintiff. Therefore, the Court finds that the entire debt owing to the Plaintiff is non-dischargeable. The Debtor owed the Plaintiff the aggregate amount of $32,163.94 as of January 2006, with interest and costs continuing to accrue thereon. Under the Court's analysis, the Plaintiff is also entitled to reasonable attorney's fees as provided for in the parties' Note. Renfrow v. Draper. 232 F.3d 688 (9th Cir. 2000). The Plaintiff shall submit an affidavit regarding attorney's fees, to which the Defendant shall have the opportunity to object as to reasonableness and amount. The Court will execute a separate order incorporating this Memorandum Decision.

10

1

2     DATED this 30th day of October, 2006.

3

4     _Sarah Sharer Curley_

5     Honorable Sarah Sharer Curley

6     United States Bankruptcy Judge

7

8   BNC TO NOTICE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    11

# Exhibit A:
# Loan Amortization Schedule

| | | | | |
|---|---|---|---|---|
| Loan amount $ | 24,143.69 | Scheduled payment | $ | 319.00 |
| Annual interest rate | 12.72 % | Scheduled number of payments | | 136 |
| Loan period in months | 136 | Actual number of payments | | 23 |
| No. of payments per year | 12 | Total early payments | | 0 - |
| Start date of loan | 06/03/2003 | | | |
| Extra payment $ per month | 1.00 | | | |

Note: This amortization schedule was created using the information in Plaintiff's Exhibits 4-7.  The Loan Amount is the principal amount set forth in the parties' Promissory Note, Plaintiff's Exhibit 4 no. 471.  Also in the Note are the Start Date of loan, Scheduled Payment, and Scheduled Number of Payments.  The Annual Interest Rate was obtained from the parties' HomEq mortgage Truth in Lending Disclosure Statement.  Plaintiff's Exhibit 11 no. 291. The Number of Payments per Year, Extra Payment per Month, Actual Number of Payments, and Total Early Payments are those set forth in the Plaintiff's accounting of the Debtor's payments to her as set forth in Plaintiff's Exhibits 5-7.

12

| Pmt No. | Payment Date [†] | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 06/03/2003 | $ 24,143.69 | $ 319.00 | $ 1.00 | $ 320.00 | $ 64.08 | $ 255.92 | $ 24,079.61 | $ 255.92 |
| 2 | 07/07/2003 | 24,079.61 | 319.00 | 1.00 | 320.00 | 64.76 | 255.24 | 24,014.86 | 511.17 |
| 3 | 08/03/2003 | 24,014.86 | 319.00 | 1.00 | 320.00 | 65.44 | 254.56 | 23,949.41 | 765.72 |
| 4 | 09/05/2003 | 23,949.41 | 319.00 | 1.00 | 320.00 | 66.14 | 253.86 | 23,883.28 | 1,019.59 |
| 5 | 10/08/2003 | 23,883.28 | 319.00 | 1.00 | 320.00 | 66.84 | 253.16 | 23,816.44 | 1,272.75 |
| 6 | 11/10/2003 | 23,816.44 | 319.00 | 1.00 | 320.00 | 67.55 | 252.45 | 23,748.90 | 1,525.21 |
| 7 | 12/10/2003 | 23,748.90 | 319.00 | 1.00 | 320.00 | 68.26 | 251.74 | 23,680.63 | 1,776.94 |
| 8 | 01/07/2004 | 23,680.63 | 319.00 | 1.00 | 320.00 | 68.99 | 251.01 | 23,611.65 | 2,027.96 |
| 9 | 02/10/2004 | 23,611.65 | 319.00 | 1.00 | 320.00 | 69.72 | 250.28 | 23,541.93 | 2,278.24 |
| 10 | 03/09/2004 | 23,541.93 | 319.00 | 1.00 | 320.00 | 70.46 | 249.54 | 23,471.48 | 2,527.79 |
| 11 | 04/15/2004 | *23,496.48 | 319.00 | 1.00 | 320.00 | 70.94 | 249.06 | 23,425.54 | 2,776.85 |
| 12 | 05/11/2004 | *23,450.24 | 319.00 | 1.00 | 320.00 | 71.43 | 248.57 | 23,378.81 | 3,025.42 |
| 13 | 06/09/2004 | 23,378.81 | 319.00 | 1.00 | 320.00 | 72.18 | 247.82 | 23,306.63 | 3,273.24 |
| 14 | 07/16/2004 | *23,331.63 | 319.00 | 1.00 | 320.00 | 72.68 | 247.32 | 23,258.95 | 3,520.55 |
| 15 | 08/16/2004 | *23,283.95 | 319.00 | 1.00 | 320.00 | 73.19 | 246.81 | 23,210.76 | 3,767.36 |
| 16 | 09/12/2004 | *23,235.76 | 319.00 | 1.00 | 320.00 | 73.70 | 246.30 | 23,162.06 | 4,013.66 |
| 17 | 10/15/2004 | *23,187.06 | 319.00 | 1.00 | 320.00 | 74.22 | 245.78 | 23,112.84 | 4,259.44 |
| 18 | 11/03/2004 | *23,137.84 | 319.00 | 1.00 | 320.00 | 74.74 | 245.26 | 23,063.10 | 4,504.71 |
| 19 | 12/23/2004 | *23,088.10 | 319.00 | 1.00 | 320.00 | 75.27 | 244.73 | 23,012.83 | 4,749.44 |
| 20 | 01/27/2005 | *23,037.83 | 319.00 | 1.00 | 320.00 | 75.80 | 244.20 | 22,962.03 | 4,993.64 |
| 21 | 02/23/2005 | *22,987.03 | 319.00 | 1.00 | 320.00 | 76.34 | 243.66 | 22,910.69 | 5,237.30 |
| 22 | 04/18/2005 | *22,935.69 | 319.00 | 1.00 | 320.00 | 76.88 | 243.12 | 22,858.81 | 5,480.42 |
| 23 | 05/13/2005 | *22,383.81 | 319.00 | 1.00 | 320.00 | 82.73 | 237.27 | 22,301.08 | 5,717.69 |
| 24 | 06/03/2005 | *22,326.08 | 0.00 | - | 0.00 | (236.66) | 236.66 | 22,562.74 | 5,954.35 |
| 25 | 07/03/2005 | *22,587.74 | 0.00 | - | 0.00 | (239.43) | 239.43 | 22,827.17 | 6,193.78 |
| 26 | 08/03/2005 | *22,852.17 | 0.00 | - | 0.00 | (242.23) | 242.23 | 23,094.40 | 6,436.01 |
| 27 | 09/03/2005 | *23,119.40 | 0.00 | - | 0.00 | (245.07) | 245.07 | 23,364.47 | 6,681.07 |
| 28 | 10/03/2005 | *23,389.47 | 0.00 | - | 0.00 | (247.93) | 247.93 | 23,637.40 | 6,929.00 |
| 29 | 11/03/2005 | *23,662.40 | 0.00 | - | 0.00 | (250.82) | 250.82 | 23,913.22 | 7,179.82 |
| 30 | 12/03/2005 | *23,938.22 | 0.00 | - | 0.00 | (253.75) | 253.75 | 24,191.97 | 7,433.57 |
| 31 | 01/03/2006 | *24,216.97 | 0.00 | - | 0.00 | (256.70) | 256.70 | 24,473.67 | 7,690.27 |

[†] Payment dates were obtained from Plaintiff's Exhibits 5-7.

* Indicates $25 late fee added to "Beginning Balance." Such a fee was provided for in the Note. Plaintiff's Exhibit 4 no. 471.

Plaintiff's accounting of late payments, including copies of Debtor's payments to Plaintiff, are set forth in Plaintiff's Exhibits 5-7.

13